Mark F. James (5295)
Mitchell A. Stephens (11775)
HATCH, JAMES & DODGE, P.C.
10 West Broadway, Suite 400
Salt Lake City, Utah 84101
Telephone: (801) 363-6363
Email: mjames@hjdlaw.com
        mstephens@hjdlaw.com

*Attorneys for Plaintiff Xyngular Corporation*

Stephen E. W. Hale (5285)
Matthew J. Ball (9414)
Rita M. Cornish (11293)
Laura Kennedy (7238)
PARR BROWN GEE & LOVELESS, P.C.
185 South State Street, Suite 800
Salt Lake City, Utah 84111
Telephone: (801) 532-7840
Email:    shale@parrbrown.com
          mball@parrbrown.com
          rcornish@parrbrown.com
          lkennedy@parrbrown.com

*Attorneys for the Third-Party Defendants*

## IN THE UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| XYNGULAR CORPORATION,<br><br>        Plaintiff,<br><br>v.<br><br>MARC SCHENKEL,<br><br>        Defendant.<br><br>[and Related Counterclaims and Cross claims] | **XYNGULAR'S AND THIRD-PARTY DEFENDANTS' JOINT MEMORANDUM IN OPPOSITION TO SCHENKEL'S MOTION TO COMPEL**<br><br>Civil No. 2:12-cv-00876-RJS<br><br>Judge Robert J. Shelby |

Plaintiff Xyngular Corporation ("Xyngular") and Third-Party Defendants Rudy Revak, Mary Julich, Steve Kole, Marc Walker, Bruce Jensen, Dan Murphy, Russell Fletcher, Jim Northrop, Robert Spangler, Symmetry Corporation, and Global Ventures Management Services, LLC ("GVMS") (collectively, the "Third-Party Defendants") hereby submit this Memorandum in Opposition to Schenkel's Motion to Compel.

## INTRODUCTION

Schenkel's Motion is indicative of his (or his counsels') approach to litigation.  In an effort to draw time and attention away from the real merits, Schenkel attempts to gain the offensive and convince the Court that Xyngular, the Third-Party Defendants, and their respective counsel are not playing fairly.  This attempt is little more than gamesmanship, and it should not be countenanced.

First, and foremost, Xyngular and the Third-Party Defendants not only have complied with their Rule 26 obligations, but have exceeded those obligations in an effort to make discovery in this case as efficient as possible.  Schenkel's Answer, Counterclaim and Third-Party Complaint names over a dozen defendants and asserts 21 causes of action.  Despite the complexity of the case, Xyngular and the Third-Party Defendants immediately began – without any obligation at the time to do so –a broad search for potentially relevant documents with the intent to produce *all* of the discoverable documents they locate.  That effort commenced before any discovery requests were propounded.  Xyngular and the Third-Party Defendants are not dragging their feet on discovery or otherwise disregarding their obligations.  To the contrary, these dozen distinct parties have been gathering and searching filing cabinets, computers, storage

rooms, computer servers, email accounts, and other locations for *all* potentially relevant documents so that they can produce *all* of their documents in the case as soon as they reasonably can.

Schenkel repeatedly has been told that Xyngular and the Third-Party Defendants are gathering and will be making this comprehensive production (rather than the narrow disclosure required by Rule 26) as soon as they reasonably can do so.  [*See, e.g.*, Ex. B to Mem. in Supp.]. Schenkel and his counsel, however, seek to vilify rather than cooperate with an opposing party. Accordingly, Schenkel's Motion does not even recognize the efforts Xyngular and the Third-Party Defendants have been making.  Nor does Schenkel's Motion recognize that Xyngular and the Third-Party Defendants extended more than a half-dozen invitations to Schenkel and his counsel to meet and confer regarding the status of this effort, ways to narrow the scope and burdens of discovery, or any other discovery concerns Schenkel may have.  Schenkel refused each such invitation, choosing unnecessary motion practice instead of meaningful dialogue.[1]

Despite the fact that Xyngular and the Third-Party Defendants have exceeded their discovery obligations and repeatedly invited meaningful cooperation, Schenkel has the audacity to suggest that Xyngular and the Third-Party Defendants have refused to cooperate in discovery. Schenkel claims he unsuccessfully has attempted to address his concerns over Xyngular and the Third-Party Defendants' initial disclosures on three separate occasions.  What Schenkel does not disclose to the Court is his first attempt came literally on the heels of Xyngular and the Third-Party Defendants having made their initial disclosures, and at a time when counsel was

---

[1] Schenkel's threats to file a motion to compel first started after Xyngular proposed a change to the Scheduling Order in this case to allow for more depositions, given the numerous witnesses Schenkel identified in their initial disclosures.  After Schenkel declined to respond and Xyngular followed-up, Schenkel filed this motion.

responding to Schenkel's Motion for Temporary Restraining Order.   The second "attempt" literally occurred in the courtroom when counsel was preparing to present argument and evidence to Judge Robert Shelby at the hearing on the TRO motion.   Xyngular's counsel informed Schenkel's counsel at that time that in order to have a meaningful conversation, it needed to occur at a different time – not as the parties were waiting for the court to hear argument on Schenkel's Motion.   After Schenkel's counsel raised the matter with the Court during the hearing on the Motion, the Court likewise informed Schenkel's counsel that the hearing was not the time to address discovery issues.   The third "attempt" came via email in response to Xyngular's effort to address an issue in the stipulated Attorneys' Planning Meeting Report and Scheduling Order.   Xyngular and the Third-Party Defendants responded to Schenkel's concerns and further offered to confer with Schenkel's counsel about the various discovery issues.   [*See* Ex. B (M. James Feb. 14, 2013 email) ("I am available this afternoon or tomorrow for a call and would be glad to discuss any and all concerns you may have . . . ."); (S. Hale Feb. 14, 2013 email) ("I invite you to participate in a telephone conference tomorrow to discuss the disputes.   I am available anytime.")].   Apparently afraid that cooperation may interfere with gamesmanship, Schenkel's counsel did not accept the offer to confer.   Instead, Schenkel filed the current motion without ever calling counsel for Xyngular or the Third-party Defendants.

Second, Schenkel's suggestion that he is a good-faith actor, who has meticulously met his discovery obligations and now simply wants reciprocation, is unfounded.   Indeed, it is dumbfounding.   Schenkel claims to have produced all documents he has that relate to this matter. What he fails to reveal, however, is that the overwhelming majority of the documents he

produced as "initial disclosures" were stolen from Xyngular and the Third-Party Defendants in the first instance.  Some of those documents contain privileged information; others contain confidential, trade secret information; others contain sensitive information that is entirely irrelevant to this case.  Specifically, Schenkel acted in concert with an information technology consultant for the Third-Party Defendants, named Ian Swan, to access the Third-Party Defendants' proprietary servers, download files wholesale, and give them to Schenkel and his lawyers.  This scheme was revealed in the context of the evidentiary hearing before Judge Shelby with respect to Schenkel's TRO motion.   The bad-faith, criminal nature of Schenkel's and Swan's scheme was so obvious that Judge Shelby elected to stop the proceedings so that he could advise Swan of his constitutional right against self-incrimination.   Swan, who like Schenkel lives in California, then left the courtroom in the middle of cross-examination by Xyngular's counsel (purportedly to call his lawyer).  Swan never returned.  Even after hearing Swan's testimony and the Court's warnings, Schenkel and his lawyers continue to rely on the documents Schenkel/Swan stole. Indeed, Schenkel produced the stolen materials back to Xyngular and the Third-Party Defendants as his initial disclosures, which he incredibly now champions as "meaningful" disclosures.  Schenkel further bemoans the alleged insufficiencies of every other party's disclosures.   [*See, e.g.*, Ex. B to Mem. in Supp. ("My client managed to produce copies of thousands of relevant documents as part of his initial disclosures . . . .")].

Xyngular and the Third-Party Defendants have complied with their discovery obligations. Indeed, by promptly commencing a comprehensive search and production (which is now well along in the process) before Schenkel even served discovery requests, Xyngular and the Third-Party Defendants exceeded their obligations.   Schenkel and his counsel know as much. They

simply are using the current motion as a means of distracting the Court from their own improper actions. The Court should not condone such a blatant misuse of the Court's and the parties' resources.[2]

## SUMMARY OF FACTS

As required by the Court's Scheduling Order, on January 15, 2013, Xyngular and the Third-Party Defendants served their Rule 26(a) Initial Disclosures on Schenkel's legal counsel. The Third-Party Defendant's Initial Disclosures identified eleven different potential witnesses and seven categories of documents that may be used to support their defense of the claims Schenkel asserted. Because the Third-Party Defendants have not asserted any claims against any of the parties in this case, they also noted that they are not seeking any damages. [*See* Ex. C to Mem. in Supp.].

Xyngular's Initial Disclosures identified eleven different potential witnesses. Xyngular's Initial Disclosures also represented (as it typically the case) that "other individuals . . . who have relevant knowledge will be identified during the scope of discovery in this case." [*See id.*]. Accordingly, Xyngular indicated that it "intends to amend and/or supplement these disclosures in the future after such individuals have been identified." Xyngular's Initial Disclosures identified seven categories of documents that may be used to support their claims and/or defenses. [*See*

---

[2] When informed of the effort Xyngular and the Third-Party Defendants have been making to gather documents, and after noting that Rule 26 does not require a party to actually produce documents with initial disclosures, Schenkel demanded that Xyngular and Third-Party Defendants inform him of the location of the documents and the categories of documents in each location. After Xyngular's counsel provided that description, Schenkel still complained. When Xyngular's counsel questioned what benefit could be gained by Xyngular and the Third-Party Defendants providing even more information about locations and categories of documents beyond what had already been provided given the comprehensive production Xyngular and the Third Party Defendants would be providing, Schenkel provided no response and simply accused Xyngular and Third-Party Defendants of failing to comply with Rule 26.

*id.*].   With respect to its claims for damages, Xyngular indicated that "Xyngular has been unable to fully determine the amount of damages to which it is entitled to [recover from] Schenkel.  The determination of those damages will be the subject of discovery in this case, and the calculation of some or perhaps all of those damages will be the subject of expert testimony."  [*Id.*].  As contemplated by the rules, Xyngular further declared that it will "provide further information and calculations regarding the damages it seeks against Schenkel as discovery progresses in the lawsuit."  [*Id.*].

In an effort to minimize the burdens of discovery, Xyngular and the Third-Party Defendants all also voluntarily agreed to go beyond their Rule 26(a) disclosure obligations.  Specifically, these 13 distinct entities and individuals promptly commenced to undertake a comprehensive search of their computers, servers, email accounts, filing cabinets, storage rooms, and other records for documents that reasonably related in any way to the more than 25 claims at issue in this case.   Schenkel and the Third-Party Defendants began this comprehensive and tedious process despite the fact that (1) it was not required by rule 26(a); (2) Schenkel had not yet served any discovery requests; and (3) at Schenkel's urging, Swan already had hacked into and stolen these parties' electronic files and provided them to Schenkel (who then provided them to his legal counsel).

Xyngular and the Third-Party Defendants informed Schenkel and his counsel that this comprehensive search was being performed, that documents are being reviewed, and that production will begin on a rolling basis shortly.  [*See* Ex. B to Mem. in Supp. ("I also write to update you on the progress of our efforts to assemble documents . . . ."); *id.* ("I will reiterate that my client[s] . . . are working diligently to assemble relevant documents for production."); *id.* ("I

assure you we are seeking to obtain documents from all relevant locations in an effort to avoid the need to re-visit document production efforts down the road."); *id.* ("My client is undertaking a significant effort to gather documents.")]. In fact, Xyngular and the Third-Party defendants have invited Schenkel and his counsel to participate in discussions about the progress and scope of this process a number of times. [*Id.*]. Schenkel and his counsel consistently have refused.

On February 13, 2013, counsel for Xyngular wrote to "update [Schenkel] on the progress of [Xyngular's and the Third-Party Defendants'] efforts to assemble documents to produce in connection with [the] initial disclosures (and also in response to [Schenkel's] recently propounded document requests)." [*See* Ex. B. to Mem. in Supp. (Feb. 13, 2013 letter from M. James)]. As part of that letter, Xyngular also supplemented its initial disclosures to detail the location of the categories of documents it had identified and was collecting. [*Id.*]. Xyngular then addressed a number of other discovery issues to which Schenkel has refused to fully respond. As part of that letter, Xyngular's counsel stated he was "willing to discuss any [the discovery issues] with you if you have questions or comments." [*Id.*].

That same day, Schenkel's counsel responded, via email, and indicated that he "would also like to again confer with [Xyngular] regarding [its] initial disclosures." [*Id.*]. Two more emails were exchanged that day. Xyngular's counsel again indicated that he was willing to "confer about" Schenkel's concerns. Indeed, Xyngular's counsel asked that Schenkel's counsel "[p]lease let me know when you are available and let's see if you, Steve Hale [counsel for the Third Party Defendants] and I can get on a call." [*Id.* (Feb. 13, 2013 email from M. James)].

Rather than accept the invitation to participate in a good-faith discussion, Schenkel's counsel responded by email accusing unidentified individuals of having "destroyed and continue

to spoliate documents," an ironic claim given Schenkel's counsel claims he needs to know the location of the defendants' documents.  [*Id.* (Feb. 13, 2013 email from S. Wood)].  When counsel asked for reasonable details about the alleged spoliation, Schenkel's counsel refused to provide any explanation of or support for this serious allegation.

Xyngular's counsel responded to Schenkel's new concerns on February 14, 2013, including by responding to Schenkel's spoliation charges.  As part of that communication, Xyngular reiterated that it was searching its databases for documents and would be producing ***all*** of the potentially relevant documents and not simply those required by Rule 26(a).  [*Id.* (Feb. 14, 2013 email from M. James)].  Xyngular further invited Schenkel's counsel – yet again – to engage in an open dialogue about ways to "narrow the [discovery] effort, or even expedite it," and explained that Xyngular was more than willing "to get together and discuss further were documents are located, beyond what [Xyngular] previously provided."  [*Id.*].  Indeed, Xyngular's counsel ended that letter with the following invitation to Schenkel and his counsel:

> I again extend the invitation to schedule a call or face-to-face meeting to discuss the progress of our document production; expanding the number of depositions in the scheduling order; Ian Swan's deposition; and whatever other issues anyone may wish to address.

[*Id.*].

That same day, Schenkel's counsel responded and indicated "I am happy to have a call with you, Steve [counsel for the Third-Party Defendants] and Mary [Schenkel's co-counsel] to discuss the progress of . . . document production; expanding the number of depositions in the scheduling order; and Ian Swan's deposition as you suggested."  [*Id.* (Feb. 14, 2013 email from S. Wood)].  Indeed, Schenkel's counsel asked Xyngular and the Third-Party Defendants to schedule a time when the parties could meet to discuss the issues.

Immediately thereafter, Xyngular's counsel responded that "I am available this afternoon or tomorrow afternoon for a call and would be glad to discuss any and all concerns you may have about initial disclosures . . . or whatever else relating to the case you may want to discuss." [*Id.* (Feb. 14 2013 email from M. James)].   That same night, counsel for the Third-Party Defendants responded.   Counsel reaffirmed that his clients had complied with the Rule 26(a) obligations and that, as with Xyngular, his clients were "striving to obtain all of [their] records, the locations of which" already had been disclosed to Schenkel. [*Id.* (Feb. 14, 2013 email from S. Hale)]. However, the Third-Party Defendants agreed that to the extent there was any concern about the status of discovery, "the best way to resolve disputes is by talking, not exchanging caustic correspondence." Accordingly, counsel "invite[d] [Schenkel's counsel] to participate in a telephone conference tomorrow afternoon to discuss the disputes." [*Id.*].

Knowing full-well that a good-faith meet and confer conference would confirm that Xyngular and the Third-Party Defendants were working diligently to produce documents, Schenkel filed this current motion without participating in the offered conference call.   Indeed, despite receiving half a dozen invitations to "schedule a call or face-to-face meeting to discuss" the various issues, Schenkel and his counsel have never called (or, as far as counsel is aware, attempted to call) Xyngular's or the Third-Party Defendants' counsel about these issues.

Xyngular and its counsel never refused to comply with Rule 26 (or any other Rule) or dismissed it as "unhelpful" as Schenkel claims.   Rather, Schenkel's emails raised a concern that Xyngular had not adequately described the location of certain documents as part of its initial disclosures. ***Xyngular responded by describing the locations of the documents***, as required by Rule 26(a). [*See* Ex. B. to Mem. in Supp. ("[S]uch documents are located on the server used by

Xyngular, on the personal computers of some of the individual third-party defendants, and some hard copies of documents are located in the Xyngular office in San Jose.")].   Thereafter, Xyngular's counsel also recognized that Xyngular and the Third-Party Defendants already had agreed to produce copies of the documents; thus, a description of their location was not particularly useful.  Xyngular's counsel suggested "our time will be better spent" "with a call or even a meeting" regarding "how to narrow the [discovery] effort, or even expedite it."   [*Id.*]. Nevertheless, Xyngular also reiterated that "[i]f you would like to get together and discuss further where documents are located, beyond what he have previously provided, I'm game for that."  [*Id.*].  Schenkel and his lawyers yet again refused this invitation.

**ARGUMENT**

I.   **XYNGULAR AND THE THIRD-PARTY DEFENDANTS HAVE COMPLIED WITH THEIR OBLIGATIONS UNDER RULE 26.**

Rule 26(a) is designed to "accelerate the exchange of basic information."  Fed. R. Civ. P. 26 Adv. Comm. Notes (1993).  It is not designed "to be a comprehensive discovery tool." *Cleancut, LLC v. Rug Doctor*, 2009 WL 3400979 (D. Utah 2009).  Moreover, it is anticipated that the disclosures a party files at the onset of the case may not be complete.  Indeed, Rule 26(a)(1)(E) provides that disclosures only need to address "information then available to" the disclosing party.  Likewise, Rule 26(e) provides parties with both the opportunity and the burden of supplementing their disclosures as additional information is discovered.  *See generally* Fed. R. Civ. P. 26 Adv. Comm. Notes (1993) ("The party should make its initial disclosures based on the pleadings and the information then reasonable available to it.  As its investigation continues and as the issues in the pleadings are clarified, it should supplement its disclosures . . . .").

This is a complicated case involving over a dozen parties and more than 25 distinct causes of action.  To date, no depositions have occurred and while Schenkel has propounded his first set of discovery, the responses are not yet due.  Thus, at the outset of the case, Xyngular and the Third-Party Defendants provided their initial disclosures based on the information then reasonably available to them.  As contemplated by Rule 26(e), Xyngular and the Third-Party Defendants will supplement their responses as additional information is discovered in the course of litigation.   Xyngular and the Third-Party Defendants have complied with and will continue to comply with Rule 26(a).

### A.   Xyngular and the Third-Party Defendants Complied With the Disclosure Obligations For Documents.

Rule 26(a)(1)(A)(ii) provides that a party should provide "a copy of, or a description by category and location of, all documents, electronically stored information, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(B).  As the notes to that rule expressly declare, that provision "does not require production of any documents."  Fed. R. Civ. P. 26 Adv. Comm. Notes (1993).  Rather, that rule provides that in some cases a party "may prefer to provide copies of documents rather than describe them."  *Id.*  "If, *as will be more typical*, only the description is provided, the other parties are expected to obtain the documents desired by proceeding under Rule 34 or through informal requests."  *Id.*  Put simply, Rule 26(a)(1)(B) does not require a party to produce ***anything***, nor does it require a party to identify ***everything***.  *See also* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring identification solely of documents "the party may use to support its claims or defenses").

Xyngular's and the Third-Party Defendants' Initial Disclosures describe both the categories and locations of the documents they intended to rely on as of January 15, 2013.  [*See* Ex. C to Mem. in Supp. (describing the categories of documents); *see also* Ex. B to Mem. in Supp. (disclosing that documents were located "on the server used by Xyngular" on "personal computers" and "in the Xyngular offices in San Jose")].  Xyngular and the Third-Party Defendants were under no obligation to produce the materials identified under Rule 26. Accordingly, Schenkel's complaint that documents have not been "produced" fails.

Schenkel also argues "the Xyngular Parties do not identify documents and information relevant to the majority of subjects at issue in this case."  [Mem. in Supp. at p. 4].  Schenkel then

speculates about documents that he thinks should exist and be "relevant to the majority [of the] subjects at issue in this case," including his "Answer, Counterclaim and Third-Party Complaint." [Mem. in Supp. p. 4]. Schenkel's hypothetical list includes "documents and information relevant to" "labor violations," "waste and mismanagement," "misuse of corporate credit cards," and "purported lavish parties." [*Id.*].

In the first instance, Schenkel's speculation about documents is wrong. Schenkel's unsupported speculation about documents does not equate with the actual existence of those documents. Furthermore, Schenkel's argument either misstates or misunderstands Rule 26. Rule 26(a)(1)(A)(ii) does not require a party to identify every document that may be "rfelevant" to the dispute. Nor does Rule 26(a)(1)(A)(ii) require Xyngular and the Third-Party Defendants to identify documents Schenkel can rely on in support of his own "Answer, Counterclaim and Third-Party Complaint." [Mem. in Supp. p. 4]. Rather, Rule 26 requires that a party disclose "based on the information then reasonably available to it" only the documents that the party "has in its possession, custody, or control and may use to support its claims or defenses." Fed. R. Civ. P 26(a)(1)(A)(ii). In other words, Rule 26(a) does not require disclosure of documents that (1) a party does not have in his possession, custody, or control or (2) does not intend to rely on as part of his case in chief. Xyngular and the Third-Party Defendants complied with their obligations by identifying the documents that, as of January 15, 2013, they controlled and intended to rely on as part of their cases in chief.

Although Xyngular and the Third-Party Defendants already have complied with their Rule 26(a) obligations, these parties nevertheless have engaged in efforts to try and minimize the costs and burden of discovery in this case by going beyond their Rule 26(a) obligations.

Specifically, Xyngular and the Third-Party Defendants – without any obligation to do so – are gathering, searching, reviewing and intend to produce the documents, electronic files, and other materials that are relevant to this case.  Xyngular and the Third-Party Defendants have explained as much multiple times to Schenkel.  [*See, e.g.*, Ex. B to Mem. in Supp. ("I assure you we are seeking to obtain documents from all relevant locations in an effort to avoid the need to re-visit production efforts down the road.")].  Of course, gathering, reviewing, and producing all of the documents, electronic files, and other relevant materials at the beginning of the case is a more onerous task than the mere "description" contemplated by Rule 26.  However, Xyngular and the Third-Party Defendants have been working diligently on this process and expect to begin producing documents on a rolling basis shortly.

Finally, Schenkel's motion argues that Xyngular and Third Party Defendants refused to comply with Rule 26 and instead unilaterally declared its provisions "unhelpful."  [*See* Mem. in Opp. p. 3].  That is false.  As shown, Xyngular and the Third-Party Defendants not only have complied with their Rule 26 obligations but have exceeded what is required by that Rule.  Moreover, the language Xyngular relies on is removed from its context.  Xyngular's counsel suggested that Schenkel's email campaign about the nuances of Rule 26 was not particularly helpful, especially when Xyngular and the Third-Party Defendants already are performing a broad search and production of their documents.  Accordingly, Xyngular and the Third-Party Defendants invited Schenkel to participate in a good-faith dialogue about ways to "narrow the [discovery] effort or even expedite it," rather than waste time in engaging in a transparent email campaign.  [Ex. B. to Mem. in Supp. (also offering "to get together and discuss further were documents are located")].  Schenkel apparently decided this meet and confer effort was

4

unhelpful.   Accordingly, he refused all such invitations and filed this Motion before such a conference could occur.

In short, Xyngular and the Third-Party Defendants complied with their Rule 26(a)(1)(A)(ii) obligations when they provided a description of the category and location of the documents that, as of January 15, 2013, they reasonably intended to rely on as part of their cases in chief.  These same parties then went beyond their minimal Rule 26(a) obligations when they voluntarily agreed to perform a broad search for ***all*** potentially relevant documents early in the case, in an effort to minimize the burdens of discovery.  Schenkel's motion not only confuses the requirements of Rule 26, it ignores the realities of this case and should be denied.

### B.      Xyngular Adequately Identified the Basis For its Damage Claims.

Rule 26(1)(A)(iii) requires the parties to provide "a computation of each category of damages" based on the information that is "then reasonably available to it."  Fed. R. Civ. P. 26(1)(A)(iii).  However, the Advisory Committee's comments to Rule 26 expressly contemplate that plaintiffs will not always be in a position to provide a computation of damages at the start of the case, using a patent case as an example.  ***"[A] party would not be expected to provide a calculation of damages which***, as in many patent infringement actions, ***depends on information in the possession of another party or person***."  Fed. R. Civ. P. 26 Adv. Comm. Notes (1993). Likewise, parties are not required to provide a computation of damages that are "difficult to quantify" because they are discretionary in nature. *See, e.g.*, *Crocker v. Sky View Christian Academy*, 2009 WL at *2-3 (D. Nev. 2009) (ruling plaintiff was not required to provide calculation of emotional suffering or punitive damages); *accord Williams v. Trader Pub. Co.*, 218 F.3d 481, 486 n.3 (5th Cir. 2000) ("Since compensatory damage for emotional distress are

necessarily vague and are generally considered a fact for the jury, they may not be amenable to the kind of calculation disclosure contemplated by rule 26(a)(1)(C).").  *See generally* Fed. R. Civ. P. 26 Adv. Comm. Notes (1993) ("The disclosure obligations specified in paragraph (1) will not be appropriate for all cases . . . .").

In this case, the Third-Party Defendants have not asserted any affirmative claims; they are not seeking damages but rather are defending Schenkel's claims.  Accordingly, the Third-Party Defendants correctly recognized that Rule 26(1)(A)(iii) was inapplicable to them.

Xyngular's initial disclosures recognized that, based on the information "then reasonably available to it," Fed. R. Civ. P. 26(a)(1)(E), it was not able to "fully determine the amount of damages."  [*See* Ex. C. to Mem. in Supp.].  Xyngular then explained that its calculation depends, in part, on information that it does not possess and therefore "[t]he determination of . . . damages will be the subject of discovery in this case."  [*Id.*].  Xyngular further explained that its calculation of damages relied on and "may be the subject of expert testimony" and that expert reports will be disclosed at an appropriate time.  [*Id.*].  Importantly, Xyngular also recognized its obligation to supplement its initial disclosures as discovery progressed and its expert's opinions and calculations were formed.  Specifically, Xyngular declared that it "will provide further information and calculations regarding the damages it seeks against Schenkel as discovery progresses in the lawsuit."  [*Id.*].

Xyngular's disclosures satisfied its obligations under Rule 26(a).  Those disclosures were "based on the information then reasonably available to it."  Fed. R. Civ. P. 26(a)(1)(E). Furthermore, Xyngular recognized both its right and its obligation to supplement its disclosures under Rule 26(e).  Moreover, Xyngular already has agreed to search for and produce ***all*** of the

potentially relevant documents to Schenkel, including the documents it currently possesses that relate to damages.  Nothing further is required by Rule 26(a).

Importantly, if the Court required perfection in the disclosures made at the onset of the case, it also would have to find that Schenkel's disclosures are inadequate.  Schenkel sued more than a dozen different individuals and entities and asserted 21 causes of action.  Ultimately, Rule 26 requires Schenkel to provide "sufficient detail so as to enable each of the multiple Defendants in the case to understand the contours of its potential exposure and make informed decisions as to settlement and discovery."  *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Ca. 2003).  In other words, Schenkel must identify individually for each of the 13 defendants he has named, what amount he claims is owed by that defendant, for each of the 21 claims he has asserted.  *Id.*  Schenkel's disclosures fall far short of this standard.  [Schenkel's Amended Initial Disclosures are attached as Exhibit A].  However, rather than rush to the Court in an effort to vilify Schenkel, Xyngular and the Third-Party Defendants have recognized the difficulty of performing this type of calculation early in the case, before documents have been exchanged and experts retained.  Accordingly, Xyngular and the Third-Party Defendants have recognized that in complex cases "the Court contemplates that Plaintiffs will update [their] disclosure[s] and provide greater detail as to [their] calculations as discovery progresses."  *Tutor-Saliba Corp.*, 218 F.R.D. at 222.

"As discovery proceeds, [the parties] may, indeed must, supplement their initial disclosures to reflect information obtained through discovery."  *Id.*  Xyngular and the Third-Party Defendants anticipate doing so, and expect the same from Schenkel.  Likewise, when an "expert's report contains Plaintiff's computation of damages[,] such a computation is part of the

initial and continuing disclosure duty of the Plaintiffs." *Laney v. Am. Equity Inv. Life Ins. Co.*, 2002 WL 34706713 at *2 (M.D. Fla. 2002).  Xyngular (and presumably Schenkel) "will provide further information and calculations regarding the damages it seeks . . . as discovery progresses in the lawsuit."  [Ex. C to Mem. in Supp.].  However, that does not mean the disclosures filed at the start of the case are inadequate.

### C. Xyngular and the Third-Party Defendants Adequately Identified Potential Witnesses.

Rule 26(a)(1)(A)(i) requires a party to provide "the name and, if known, the address and telephone number of each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment."  Fed. R. Civ. P. 26(a)(1)(A)(i).  In this case, Schenkel argues that "the Xyngular Parties' initial disclosures fail to disclose individuals the Xyngular Parties know are likely to have discoverable information relevant to this matter."  [Mem. in Supp. p. 5].  That argument, however, miscomprehends Rule 26.

Xyngular and the Third-Party Defendants *are not* required to disclose everyone who might possibly "have discoverable information," as Schenkel claims.  Rather, Xyngular and the Third-Party Defendants only are required to disclose those individuals that, at the time the disclosures are made, "the disclosing party may use to support its claims or defenses."  Fed. R. Civ. P. 26(a)(1)(A)(i); *see also id.* R. 26(a)(1)(E) (recognizing disclosures are made "based on the information then reasonably available").  Xyngular and the Third-Party Defendants fairly complied with this obligation.

Yet again, if any party has failed to comply with its Rule 26(a) obligations it is Schenkel.  Because he simply misunderstood Rule 26(a)(1)(A)(i)'s obligations, Schenkel apparently has

named anyone who he thinks might have "discoverable information" and has wholly failed to provide any indication of which witnesses he may actually "use to support [his] claims or defenses." *Id.* Thus, Schenkel identifies over 70 potential witnesses in his disclosures, despite the fact that the Court's prior Scheduling Order limits Xyngular to five depositions, and indicates that trial will not last more than 12 days. [*See* Dkt. 23; Ex. A]. Importantly, Xyngular and the Third-Party Defendants raised this issue with Schenkel, and Schenkel still failed to identify those witnesses he actually intends to rely on in support of his case. [*See, e.g.*, Ex. B to Mem. in Supp.]. Accordingly, either Schenkel must supplement his disclosures to comply with Rule 26(a), or the Scheduling Order should be amended to allow for at least 70 depositions and a month of trial.

Likewise, Rule 26(a)(1)(A)(i) expressly declares that that the disclosing party must provide "the address and telephone number" of each individual it identifies. Schenkel has not even attempted to comply with this provision. Indeed, Schenkel's Initial Disclosures do not provide a single telephone number or address for ***any*** of the more than 70 potential witnesses Schenkel identifies. [*See* Ex. A].

Xyngular and the Third-Party Defendants complied with their obligations under Rule 269(a)(1)(A)(i). If any party currently is required to provide supplemental responses pursuant to Rule 26, it is Schenkel, who has failed to identify the witnesses he actually intends to rely on and the contact information for those witnesses.

## II.   RULE 37 REQUIRES SCHENKEL TO ENGAGE IN GOOD FAITH EFFORTS TO REACH AN AGREEMENT BEFORE FILING A MOTION TO COMPEL.

"[T]he court will not entertain any discovery motion . . . unless counsel for the moving party . . . has made a reasonable effort to reach agreement with the opposing attorneys on the

matters set forth in the motion."  DUCiv. R. 37-1(a); *accord* Fed. R. Civ. P. 37(a)(1) (providing

that a party "must" declare that he "has in good faith conferred or attempted to confer with the

[opposing] person or party").

Rule 37's requirement of a "good faith" effort at cooperation is not a vacant procedural

hurdle.  Rather, Courts routinely have reaffirmed that it is a substantive provisions designed to

ensure motions to compel are filed only as a last resort, and certainly not merely for strategic

gain.  "A reasonable effort to confer means more than mailing a letter to opposing counsel.

*Williams v. Bd. of County Comm'rs of Unified Gov. of Wyandotte County*, 192 F.R.D. 698, 699

(D. Kan. 2000) (internal quotation marks omitted).  "It requires that counsel converse, confer,

compare views, consult and deliberate."  *Id.* (internal quotation marks omitted).[3]

In the current case, Xyngular and the Third-Party Defendants invited Schenkel and his

lawyers to participate in a meaningful face-to-face or even telephonic conference no fewer than

six different times.  Indeed, on February 14, 2013, counsel for Xyngular and the Third-Party

Defendants actually offered to schedule a conference call for the very next morning.  [*See* Ex.

B].  Schenkel refused to participate, instead electing to file the current motion the same day the

conference call was supposed to occur.  In his Motion, Schenkel suggests that his counsel "in

good faith conferred with the Xyngular Parties."  That "good faith" effort allegedly was satisfied

through email accusations of document destruction and charges that counsel had failed to comply

with their discovery obligations.  Schenkel misunderstands his Rule 37 obligations.  Rule 37

requires a good-faith "reasonable effort ***to reach agreement,***" not the sending of caustic emails

---

[3] The Ninth Circuit expressed its distaste for unnecessary discovery disputes colorfully in the case of *Dahl v. City of Huntington Beach*, 84 F.3d 363, 364 (9th Cir. 1996) ("If there is a hell to which disputatious, uncivil, vituperative lawyers go, let it be one in which the damned are eternally locked in discovery disputes with other lawyers of equally repugnant attributes.").

that only complain of alleged deficiencies.  *See* DUCiv. R. 37-1(a) (emphasis added).  Thus, when Xyngular and the Third-Party Defendants repeatedly offered to meet with Schenkel's counsel in an effort to address and resolve the parties identified discovery concerns, Schenkel was required to participate in the process before filing this motion.  *Cf. Gee v. City of Chicago Public Schools*, 2002 WL at *2 (N.D. Ill. 2002) (recognizing that although defendant's letter "clearly explains [his] position . . . in detail" "[d]efendant should have, at the very least, scheduled a time to meet with [p]laintiff to discuss the instant dispute").

As recognized, Xyngular and the Third-Party Defendants fully complied with their Rule 26(a) obligations and, therefore, this motion can be denied on its merits.  In so doing, however, the Court should remind Schenkel of his obligation to "confer" in "good faith" in an "effort to reach an agreement" before filing burdensome discovery motions with the Court.[4]

## CONCLUSION

Schenkel's motion is not about ensuring compliance with Rule 26 or the other Rules of Civil Procedure.  Schenkel's motion was filed as a strategic ploy to distract the Court from the real issues and in an effort to burden Xyngular and the Third-Party Defendants with scorched-earth litigation tactics.  Indeed, if Schenkel truly were concerned about compliance with the Rules of Civil Procedure, he would have ensured his own Rule 26(a) disclosures were complete and would have participated in the good-faith conferences that Xyngular and the Third-Party Defendants repeatedly requested.  The Court should see through Schenkel's motion and deny it.

---

[4] Schenkel makes passing reference in the motion portion of his moving papers to an entitlement to an award of attorneys' fees and costs.  While Xyngular and the Third Party Defendants do not believe such requests advance cooperation and professionalism, they note that if an award of fees and costs has any place in the context of Schenkel's Motion to Compel, such award properly would be in favor of Xyngular and Third Party Defendants.

Discovery is burdensome enough without encouraging unnecessary motions designed to distract from the real issues.

DATED this 4th day of March, 2013.

HATCH, JAMES & DODGE

_/s/ Mark F. James_____
Mark F. James
Mitch A. Stephens

*Counsel for Plaintiff/Counterclaim Defendant*
*Xyngular Corporation*

PARR, BROWN LOVELESS & GEE

__/s/ Steve E.W. Hale_____
Steve E.W. Hale
Matthew J. Ball
Rita M. Cornish

*Counsel for the Third-Party Defendants*