**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| XYNGULAR CORPORATION, a Delaware corporation,<br><br><br>Plaintiff,<br><br>v.<br><br>MARC SCHENKEL, an individual,<br><br><br>Defendant. | MEMORANDUM<br>DECISION AND ORDER<br><br>Case No. 2:12-cv-00876-RJS<br><br>Judge Robert J. Shelby |

Before the court is a motion to dismiss shareholder derivative claims.  Plaintiff Marc Schenkel brought the claims on behalf of Xyngular Corporation against members of its board of directors.  This motion is part of a broader lawsuit involving Mr. Schenkel, Xyngular, members of Xyngular's board, and a number of third-party defendants.  Xyngular moves to dismiss Mr. Schenkel's derivative claims.  For the reasons stated below, the court grants Xyngular's motion.

## BACKGROUND

Mr. Schenkel is a cofounder and shareholder of Xyngular, a network marketing company that distributes health supplements.  The company was incorporated in Delaware in 2009.  Mr. Schenkel was also a member of the board of directors, along with Rudy Revak, Mary Julich, and Steve Kole.  Shortly after Xyngular's formation, Mr. Schenkel's business relationship with the other board members began to deteriorate and the parties resorted to litigation.  Part of that litigation includes derivative claims Mr. Schenkel brought on behalf of Xyngular.  Below, the court summarizes the facts relevant to those claims.

**I.  Mr. Schenkel's Demand Letter**

In September 2011, Mr. Schenkel sent a demand letter to Xyngular in which he demanded that the board investigate and pursue claims against Mr. Revak, Mr. Kole, and Ms. Julich for "misappropriation of corporate assets, corporate waste, self-dealing, and usurpation of corporate opportunities."  Mr. Schenkel alleged in the demand letter that

- the board of director's use of Global Venture Management Services, LLC (GVMS) to provide IT services and other administrative support was improper because a conflict of interest existed and GVMS provided substandard service;

- Mr. Revak, Mr. Kole, and Ms. Julich improperly authorized bonuses to GVMS employees, including themselves;

- Mr. Revak, Ms. Julich, and Mr. Kole improperly created and operated a company named Nouvara that competed with Xyngular;

- Mr. Revak, Ms. Julich, and Mr. Kole transferred "stock in Xyngular to shareholders of GVMS without apparent consideration";

- Mr. Jensen, the vice-president of GVMS, was permitted to take control of the management of Xyngular without approval from the board; and

- Mr. Jensen acted contrary to Xyngular's interest by hiring GVMS to provide IT services despite the conflict of interest created by Mr. Jensen's employment at GVMS.

**II.  Xyngular's Response to the Demand Letter**

Days after receiving the demand letter, Xyngular responded to Mr. Schenkel by stating that the board "disagrees with [Mr. Schenkel's] claims of self-dealing, mismanagement and retaliatory behavior and believes it has acted, and continues to act, in the best interests of its shareholders."  The letter further denied any allegations that the commercial relationship

between Xyngular and GVMS was inappropriate.  Xyngular also stated that it was "willing to confirm this conclusion through a form of independent review."  To conduct the independent review, Xyngular planned to add to its board "at least two individuals with significant experience in the networking marketing industry who have no ownership or business interest" in Xyngular or GVMS.  These new board members would investigate Mr. Schenkel's letter and determine whether the board should pursue derivative claims.

In September 2012, Xyngular filed this suit, seeking a declaratory judgment that Mr. Schenkel had breached his obligations to the company.  Xyngular then further responded to Mr. Schenkel's demand letter in October 2012, stating that the company appointed three new independent board members (Jim Northrop, Dan Murphy, and Russ Fletcher) to investigate the matter.  The letter generally addressed Mr. Schenkel's allegations by stating that

- the bonuses paid to GVMS were for important services and that additional payments were in the best interest of the company to ensure continuation of the services;

- the creation of Nouvara was meant to improve efficiency by utilizing a centralized management company;

- there was no transfer of Xyngular stock to members of GVMS other than the stock issued to Mr. Revak, Ms. Julich, and Mr. Kole when Xyngular was formed;

- Mr. Jensen provides consulting and management services for Xyngular but "does not control [the company] and has no authority to take action on . . . matters other than as directed by the officers and Directors of Xyngular"; and

- GVMS provides satisfactory IT services and Mr. Fletcher, a board member and IT expert, selected GVMS to provide such services.

In sum, the new board members investigated the allegations in Mr. Schenkel's demand letter and decided against pursuing derivative claims.

## III.  Mr. Schenkel's Claims

Mr. Schenkel responded to Xyngular's Complaint by filing counterclaims and third-party claims against Xyngular directors.  Mr. Schenkel also brought derivative claims on behalf of Xyngular.  These claims, numbered eleven through fifteen in Mr. Schenkel's Complaint, include breach of contract, breach of covenant of good faith and fair dealing, promissory estoppel, unjust enrichment, and breach of fiduciary duty.  Mr. Schenkel filed his Complaint after the Xyngular board had informed him that it declined to pursue derivative claims.

In his Complaint, Mr. Schenkel makes several allegations about the adequacy of the Xyngular board's investigation of his demand letter.  In relevant part, Mr. Schenkel makes the following allegations:

- the purported new board members tasked with investigating the demand letter were not independent;[1]

- the results of the investigation were predetermined by Global Venture Partners, a company owned by Mr. Revak, Mr. Julich, Mr. Kole, and Mr. Jensen;[2]

- the new board members failed to reasonably investigate the demand letter;[3] and

- the board's response to the demand letter contained false and misleading statements.[4]

---

[1] Third-Party Complaint (Dkt. 80), at ¶¶ 65-73.
[2] *Id.* at ¶ 75.
[3] *Id.* at ¶ 118.
[4] *Id.* at ¶ 98.

## ANALYSIS

### I.  Standard of Review

Federal Rule of Civil Procedure 23.1 requires a shareholder derivative complaint to "state with particularity any effort by the plaintiff to obtain the desired action from the directors or comparable authority" and "the reasons for not obtaining the action or not making the effort."[5] The Tenth Circuit has held that the satisfaction of Rule 23.1 is a matter of federal law.  But the law of the state of incorporation, in this case Delaware, is an appropriate source of federal common law for suits involving Rule 23.1.[6]

Delaware courts have clarified that under Rule 23.1, a plaintiff wishing to bring a claim for a wrongful refusal of demand "must allege with particularity facts raising a reasonable doubt that the corporate action being questioned was properly the product of business judgment."[7] When considering a motion to dismiss, the court "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."[8]

### II.  Presuit Demand and Board Independence

The board of directors decides whether to pursue claims on behalf of the corporation.[9] Shareholders can cause the corporation to bring claims if they "(1) make a pre-suit demand by presenting the allegations to the corporation's directors, requesting that they bring suit, and showing that they wrongfully refused to do so, or (2) plead facts showing that demand upon the board would have been futile."[10]  Here, Mr. Schenkel made a presuit demand when he sent his demand letter to the Xyngular board.

---

[5] Fed. R. Civ. P. 23.1(b)(3)(A)-(B).
[6] *Cadle v. Hicks*, 272 F. App'x. 676, 678 (10th Cir. 2008) (citing *Kamen v. Kempter Fin. Servs., Inc*., 500 U.S. 90, 96, 108 (1991)).
[7] *Brehm v. Eisner*, 746 A.2d 244, 254-55 (Del. 2000).
[8] *Cressman v. Thompson*, 719 F.3d 1139, 1152-53 (10th Cir. 2013).
[9] *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 120 (Del. Ch. 2009).
[10] *Id.*

The parties dispute two issues: (1) whether Mr. Schenkel conceded the independence of the board when he made his demand and (2) whether the complaint alleges sufficient facts that the board wrongfully refused to bring the derivative claims. The court considers these issues in turn.

**A. The Board's Independence**

Mr. Schenkel contends that the Xyngular board is not independent and that he did not concede its independence by making a presuit demand. To support this contention, Mr. Schenkel makes three arguments: (1) he did not concede the independence of the new board members because he did not know their identities when he sent the demand letter; (2) the board conceded its lack of independence when it appointed new board members to investigate the allegations; and (3) Xyngular waived its defense by failing to raise it at an earlier stage of the litigation.

*(1) Independence of the New Board Members*

It is well established under Delaware law that a shareholder who makes a demand on a board before filing suit "tacitly concedes the independence of a majority of the board to respond."[11] At the very least, Mr. Schenkel conceded the independence of the existing Xyngular board members. Mr. Schenkel urges the court to draw the line there. He argues that he did not concede the independence of the new board members assigned to investigate his demand letter because he did not yet know their identities.

Mr. Schenkel then contends that the new board members lacked independence based on their preexisting friendships and business relationships with the original board members. But Mr. Schenkel conceded the independence of the original board members when he made a presuit

---

[11] *See, e.g.*, *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990); *FLI Deep Marine LLC v. McKim*, 2009 WL 1204363, at * 3 (Del. Ch. Mar. 24, 2009).

demand.  Accordingly, the original board members were independent and therefore could not destroy the new board members' independence.

### (2)  *The Board's Alleged Concession of Its Lack of Independence*

Mr. Schenkel next argues that the board conceded its lack of independence by delegating the investigation of his allegations to new board members.  Generally, the traditional business judgment rule applies when a board delegates authority to investigate a demand letter to a special litigation committee.[12]  Courts solely consider "the good faith and the reasonableness of the committee's investigation."[13]  Here, however, Mr. Schenkel cites *Abbey v. Computer and Communication Technology Corp.*[14] to argue that the board conceded its lack of independence and became "disabled from exercising business judgment."[15]  In other words, Mr. Schenkel contends that the business judgment rule does not apply.

In *Abbey*, the board formed a special litigation committee and delegated the power to not only investigate the shareholder's demand letter, but to also make all decisions on the potential lawsuit.[16]  The shareholder then brought suit, arguing the demand was excused.[17]  The board (not the special litigation committee) then moved to dismiss.[18]

The Delaware Supreme Court found that "by divesting itself of any power to make a decision on the pending suit, and by adding a new and independent director and by designating him as a Special Litigation Committee of one with the final and absolute authority to make the decision on behalf of the corporation, the incumbent board of directors, in effect, conceded that

---

[12] *Spiegel*, 571 A.2d at 778.
[13] *Id.*
[14] 457 A.2d 368 (Del. Ch. 1983).
[15] *Allison on Behalf of Gen. Motors Corp. v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1121 n.16 (D. Del. 1985) *aff'd*, 782 F.2d 1026 (3d Cir. 1985).
[16] *Id.* at 371-75.
[17] *Id.*
[18] *Id.*

the circumstances alleged in the complaint justified the initiation of the suit by the plaintiff."[19]
Thus, despite the presuit demand letter, the court allowed the shareholder to question the
independence of the board as if the complaint were filed without a demand.

But *Abbey* is limited.  The Delaware Supreme Court has warned that the case does not
"stand for the proposition that a board of directors, *ipso facto*, waives its right to challenge a
shareholder plaintiff's allegation that demand is excused by the act of appointing a special
litigation committee and delegating to that committee the authority to act on the demand."[20]
Rather, *Abbey* "specifically recognizes the right of a board of directors to appoint committees to
address derivative litigation, without automatically subjecting the committee's decision to"
judicial scrutiny into whether the board is independent.[21]

Unlike *Abbey*, the Xyngular board never fully divested itself of its decision-making
power in this lawsuit.[22]  It only tasked the new board members to investigate Mr. Schenkel's
claims.  And the new board members did just that: they investigated the demand letter and
concluded that the board should not pursue derivative claims.  In short, *Abbey* does not apply and
the board did not concede its lack of independence.

### (3)  Waiver

Lastly, Mr. Schenkel argues that Xyngular waived its demand defense by raising it nine
months after filing the suit.  But that is incorrect.  Mr. Schenkel filed the derivative claims on
October 22, 2012.  On November 30, 2012, as part of Xyngular's timely Answer to Mr.

---

[19] *Id.* at 373.
[20] *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990).
[21] *Id.*
[22] *Abbey v. Computer and Commc'n Tech. Corp.*, 457 A.2d 368, 374 (Del. Ch. 1983).  ("[If the board] had merely appointed a committee to investigate the allegations and to report back to the board for whatever action the board might choose to take on the merits of the charges, it would be one thing. In such a case the board would not be surrendering the ultimate decision on the worthiness of the alleged cause of action to a committee of independent directors.")

Schenkel's counterclaim, Xyngular asserted the business judgment rule as a defense.[23]  Xyngular

also stated that it believed that Mr. Schenkel's derivative claims were barred for failure to

comply with Rule 23.1.[24]  Accordingly, the court finds that Xyngular did not waive its demand

defense.

### B.  Wrongful Refusal

Even when a shareholder makes a presuit demand, he can still bring derivative claims if

he can show that the board wrongfully refused to bring the claims.[25]  The court now examines

Mr. Schenkel's Complaint to determine whether he alleged sufficient facts to show that Xyngular

wrongfully refused to bring the derivative claims.

### (1)  Business Judgment Rule

When a shareholder makes a presuit demand and that demand is refused, the court

reviews the board's decision under the business judgment rule.[26]  At the outset, Mr. Schenkel

argues that the new board members were not independent, and thus their decision is not protected

by the business judgment rule.  But, at least under Delaware law, Mr. Schenkel's presuit demand

operates as a concession that the board was independent, including the new board members.  The

court thus examines Mr. Schenkel's claims of wrongful refusal under the business judgment rule.

The business judgment rule is a "presumption that in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest belief that

the action taken was in the best interests of the company.  Absent an abuse of discretion, that

judgment will be respected by the courts.  The burden is on the party challenging the decision to

---

[23] Answer to Counterclaim (Dkt. 21), at 16, ¶ 9.
[24] *Id.* at 16, ¶ 10.
[25] *In re Citigroup Inc. Shareholder Derivative Litigation*, 964 A.2d 106, 120 (Del. Ch. 2009).
[26] *See, e.g.*, *Levine v. Smith*, 591 A.2d 194, 212 (Del. 1991); *Zapata Corp. v. Maldonado*, 430 A.2d 779, 784 n.10 (Del. 1981).

establish facts rebutting the presumption."[27]  Consequently, "once the shareholder makes the demand on the board . . . the Court's only inquiry is into the board's good faith and the reasonableness of the investigation."[28]  The "business judgment rule may be rebutted in those rare cases where the decision under attack is so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith.  The decision must be egregious, lack any rational business purpose, constitute a gross abuse of discretion, or be so thoroughly defective that it carries a badge of fraud."[29]  With this standard in mind, the court examines Mr. Schenkel's Complaint to determine whether it alleges that the board wrongfully refused to pursue the derivative claims.

### (2)  Mr. Schenkel's Allegations

*The board's investigation was predetermined by Global Venture Partners*: Mr. Schenkel argues that the new board members' investigation was predetermined.  He first points the court to the allegation that "[w]hile Mr. Murphy and Mr. Fletcher were attempting to improperly enrich themselves with their new business partners, Mr. Schenkel received no response from the board regarding their purported investigation into his demand letter."[30]  This appears to lead to the conclusion that the new board members were not independent and thus their investigation was predetermined.  Again, Mr. Schenkel's presuit demand operates as a concession: the new board members were independent.

Next, Mr. Schenkel states that the new board members appeared to communicate about the demand letter only six days before they sent their final response outlining the findings of the

---

[27] *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984).
[28] *Charal Inv. Co., Inc. v. Rockefeller*, 1995 WL 684869, at *2 (Del. Ch. Nov. 7, 1995).
[29] *Alidina v. Internet.com Corp.*, 2002 WL 31584292, at *4 (Del. Ch. Oct. 3, 2002) (internal quotations omitted) (quoting *Parnes v. Bally Entm't Corp.*, 722 A.2d 1243, 1246 (Del.1999) and *In re J.P. Stevens & Co.*, 542 A.2d 770, 780–81 & n.5 (Del.Ch.1988)).
[30] Third-Party Complaint (Dkt. 80), at ¶ 74.

investigation.  To support this argument, Mr. Schenkel points to an email sent from Mr.
Northrop's office to Mr. Murphy and Mr. Fletcher on October 2, 2012 that stated, "Jim
[Northrop] would like to have a call today to discuss the proposed letter to Marc Schenkel."[31]
Mr. Schenkel appears to argue that, given the short amount of time between the correspondence
and the response, the investigation was predetermined.  But the email does not suggest that the
Xyngular board only began to discuss the response on October 2, 2012.  It merely states that Mr.
Northrop wished to speak with the other new board members about the letter.

Lastly, Mr. Schenkel alleges that Global Venture Partners (a company owned by Mr.
Revak, Ms. Julich, Mr. Kole, and Mr. Jensen) forced Xyngular to file the lawsuit.[32]  This leads to
the inference that the investigation was predetermined because Xyngular had already decided to
file suit before the board responded to the demand letter.  But this also leads to another inference:
the board believed it was in the company's best interest to sue Mr. Schenkel and the new board
members, after conducting an investigation, believed that Mr. Schenkel's claims were meritless.
In the end, Mr. Schenkel's allegations that the investigation was predetermined are insufficient to
overcome the high bar of the business judgment rule.

*The new board members failed to reasonably investigate the claims*: Mr. Schenkel next
argues that the board members failed to reasonably investigate the demand.[33]  Under the business
judgment rule, "when a board refuses a demand, the only issues to be examined are the good
faith and the reasonableness of the investigation."[34]  Further, "there is obviously no prescribed
procedure that a board must follow" in investigating a claim[35] and "[c]orporate directors
normally have only limited available time to deliberate, and a determination of what matter will

---

[31] Opp. to Xyngular's Motion to Dismiss (Dkt. 144-22).
[32] Third-Party Complaint (Dkt. 80), at ¶ 75.
[33] *Id.* at ¶ 118.
[34] *Spiegel v. Buntrock*, 571 A.2d 767, 777 (Del. 1990).
[35] *Levine v. Smith*, 591 A.2d 194, 214 (Del. 1991).

(and will not) be considered must necessarily fall within the board's discretion."[36]

Mr. Schenkel's contention rests on several allegations. First, Mr. Schenkel alleges that board members did not talk with Xyngular's COO Mr. Oliver about the IT issues in the demand letter and relied on GVMS to justify its own fees rather than do an independent evaluation. But the investigating board members were not required to speak with Mr. Oliver or make an independent evaluation of the GVMS fees. The response letter specifically addresses these issues, stating, "We spent a significant amount of time evaluating your claims about deficient IT support for Xyngular and the costs for providing proper support."[37] The new board members concluded that the IT support was satisfactory and that the fees paid to GVMS were in the best interests of Xyngular.

Second, Mr. Schenkel argues that Xyngular failed to investigate whether Symmetry misappropriated Xyngular's top selling product, Xyng.[38] But the demand letter does not mention Xyng and only mentions Symmetry in passing. What's more, the determination of what is and what is not investigated falls within the board's discretion.

Third, Mr. Schenkel appears to allege that Mr. Murphy's involvement with Uppercase Living results in interestedness on the part of the board.[39] As stated previously, Mr. Schenkel's presuit demand operated as a concession that the board was independent, including Mr. Murphy.

*The response to the demand letter contains false and misleading information*: Lastly, Mr. Schenkel argues that the response to the demand letter contained false and misleading information.[40] The response letter stated, "There has been no transfer of Xyngular stock to members of GVMS, other than what was issued to Revak, Kole and Julich at the beginning of

---

[36] *Id.*
[37] Motion to Dismiss (Dkt. 62-2).
[38] Third-Party Complaint (Dkt. 80), at ¶ 117.
[39] *Id.* at ¶ 71.
[40] *Id.*  at ¶ 110.

Xyngular's existence."[41]  Mr. Schenkel argues that he defined GVMS as both GVMS and Symmetry Corporation and that the evidence strongly supports the allegation that there was transfer of stock to Symmetry.  Yet, it is unclear that Mr. Schenkel's demand letter referred to both GVMS and Symmetry when it stated, "We also question the transfer of certain stock in Xyngular to shareholders of GVMS without apparent consideration."  Xyngular appears to have responded to this concern in good faith based on a reasonable interpretation of the demand letter.

In sum, corporate directors have limited time and ample discretion.  Here, Mr. Schenkel's allegations do not overcome the presumption of good faith.  Perhaps the board's investigation could have been more thorough or effective.  Perhaps Xyngular could have made better business decisions.  But these are not the questions the court considers under the business judgment rule. Mr. Schenkel has not alleged egregious actions that rebut the presumption of deference to corporate directors' business judgment.

**CONCLUSION**

For these reasons, the court GRANTS Xyngular's Motion to Dismiss Derivative Claims and DISMISSES WITH PREJUDICE Mr. Schenkel's eleventh through fifteenth causes of action.

SO ORDERED this 8th day of January, 2015.

BY THE COURT:

ROBERT J. SHELBY
United States District Judge

---

[41] Motion to Dismiss (Dkt. 62-2).