UNITED STATES DISTRICT COURT DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| XYNGULAR CORPORATION,<br><br>　　Plaintiff,<br><br>v.<br><br>MARC SCHENKEL,<br><br>　　Defendant. | **MEMORANDUM DECISION AND ORDER** |
| MARC SCHENKEL,<br><br>　　Counterclaimant,<br><br>v.<br><br>XYNGULAR CORPORATION,<br><br>　　Counterclaim Defendant. | Case No. 2:12-cv-876<br><br>Judge Robert J. Shelby |
| MARC SCHENKEL,<br><br>　　Third-Party Plaintiff,<br><br>v.<br><br>RUDY REVAK; MARY JULICH; STEVE KOLE; MARC WALKER; BRUCE JENSEN; DAN MURPHY; RUSSELL FLETCHER; JIM NORTHROP; ROBERT SPANGLER; SYMMETRY CORPORATION; GLOBAL VENTURES MANAGEMENT SERVICES, LLC; ALYTIS, LLC; and GLOBAL VENTURES PARTNERS;<br><br>　　Third-Party Defendants. | |

This case arises out of a dispute between a corporation and a shareholder. Plaintiff and Counterclaim Defendant Xyngular Corporation sued Defendant, Counterclaimant, and Third-Party Plaintiff Marc Schenkel for breach of contract. Mr. Schenkel then counterclaimed against Xyngular and brought third-party claims against several individuals and entities associated with Xyngular. The parties eventually filed cross-motions for terminating sanctions. At the January 2016 hearing on the cross-motions, Mr. Schenkel's counsel indicated that he would be moving to disqualify the undersigned based on an alleged conflict of interest between the undersigned's law clerk and the Third-Party Defendants' counsel. After the hearing, Mr. Schenkel filed a motion to disqualify based on the alleged conflict of interest and based on allegations that the undersigned has shown actual bias against Mr. Schenkel. (Dkt. 330.)[1] For the reasons stated below, the court denies the motion.

## BACKGROUND

The dispute between the parties centers on how many shares of Xyngular Corporation stock Mr. Schenkel owns. Xyngular sued Mr. Schenkel in September 2012, seeking a declaratory judgment that Mr. Schenkel is entitled to only 2,000 shares. Xyngular also alleges that Mr. Schenkel breached his contract with and duties to the company.

In addition to answering Xyngular's Complaint, Mr. Schenkel counterclaimed against Xyngular and asserted several third-party claims against Rudy Revak, Mary Julich, Steve Kole, Marc Walker, Bruce Jensen, Dan Murphy, Russell Fletcher, Jim Northrop, Robert Spangler, Symmetry Corporation, Global Ventures Management Services, and Global Ventures Partners.[2] Mr. Schenkel claims that he is entitled to 2,600 shares of Xyngular stock and that the Xyngular Parties engaged in a fraudulent scheme to loot Xyngular's assets.

---

[1] Mr. Schenkel filed his motion to disqualify under seal. The court, however, publicly files this Memorandum Decision and Order because it does not contain any sensitive or confidential information.
[2] The court refers to Xyngular and the Third-Party Defendants collectively as the Xyngular Parties.

2

Mr. Schenkel filed a motion for a temporary restraining order in January 2013. In his motion, Mr. Schenkel asked the court to restore his entitlement to 2,600 shares of Xyngular stock, to restore his seat on Xyngular's Board of Directors, and to enjoin the Xyngular Parties from looting the company during the pendency of the litigation. The court denied the motion because Mr. Schenkel failed to show that he would suffer irreparable harm in the absence of injunctive relief.

During the hearing on Mr. Schenkel's motion for a temporary restraining order, it became apparent that Mr. Schenkel may have improperly obtained documents belonging to the Xyngular Parties and used those documents to support his pleadings and motion. Based on this apparent discovery, the Xyngular Parties filed their first motion for terminating sanctions. The Xyngular Parties alleged that Mr. Schenkel improperly encouraged a fellow shareholder—Ian Swan—to take documents belonging to the Xyngular Parties, that Mr. Schenkel collected the stolen documents belonging to the Xyngular Parties, and that Mr. Schenkel improperly used the stolen documents to support his motion for a temporary restraining order. Mr. Schenkel denied the allegations against him and asserted in his opposition brief that Xyngular spoliated evidence and filed its Complaint in bad faith.

The court held a hearing on the Xyngular Parties' motion for terminating sanctions in May 2014. During the hearing, the court expressed concern about the gravity of each party's allegations and the integrity of the judicial proceedings. After further argument, Mr. Schenkel's counsel orally moved for the court's disqualification. Mr. Schenkel filed a motion to disqualify two weeks later, alleging that the undersigned's comments and actions during the course of the litigation created an appearance of partiality and bias against Mr. Schenkel. The court denied the

motion to disqualify in its November 17, 2014 Memorandum Decision and Order.[3] The court then denied the Xyngular Parties' motion for sanctions without prejudice at a later status conference. The court also proposed that the parties conduct discovery on the allegations of misconduct and file sanctions motions, if any, based on a more complete record.

The parties engaged in additional discovery and filed cross-motions for terminating sanctions. The court held a hearing on the cross-motions on January 12, 2016. At the hearing, Mr. Schenkel was represented by Stephen Wood from the law firm of Wood Balmforth LLC; Xyngular was represented by Mark James and Mitchell Stephens from the law firm of Hatch, James & Dodge; and the Third-Party Defendants were represented by Stephen Hale and Laura Kennedy from the Salt Lake City law firm of Parr Brown Gee & Loveless (Parr Brown). Rita Cornish, who also practices at Parr Brown and represents the Third-Party Defendants in this case, attended the hearing in the gallery. The court opened the hearing by making the following disclosure:

> I've had – this case was filed I think shortly after I came to the bench in 2012, and over the course of the life of this case I've now had four law clerks assigned to this case to assist me . . . .
>
> This is [my new Law Clerk]. He's the new Clerk assigned to this case as of the end of December. [He] clerked for Parr Brown as a first year law student in 2013 for 12 weeks and then an additional six weeks as a second year law student in 2014, the summer he split with a firm in California. Canon 3F of the Code of Conduct for Judicial Employees states that a conflict of interest arises when a law clerk, quote, might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the law clerk's ability properly to perform official duties in an impartial manner. Subsection 2A of that canon further provides that a law clerk should not perform any duties, any official duties, rather, in any matter with respect to which the law clerk knows that he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding, or has served as a lawyer in the matter in controversy, or a lawyer with whom he previously practiced law has served during such association as a lawyer concerning the matter. In any event, if a

---

[3] Dkt. 173.

> law clerk conflict of interest arises, it is the law clerk and not the judge, of course, who is disqualified.
>
> [Law Clerk], as I've said, spent part of one summer and most of his first year summer as a student with Parr Brown. He knows, of course, by association the lawyers from that firm as they're here, though he – I've spoken with [Law Clerk] at some length before he had any involvement assisting me with this case. He was neither directly nor indirectly associated with this case at anytime, never performed any work of any kind on any issue relating to this case. He doesn't believe he ever did any work at all with Mr. Hale, who is the lead counsel for the Third-Party Defendants in this case. And he thinks he has some memory of doing a small project with Ms. Kennedy his first year and maybe possibly something with Ms. Cornish but nothing specific.
>
> In any event – and did I already say this? He's accepted an offer with the California firm that he split with a year and a half ago. I've concluded that he has no conflict of interest and I've asked him to continue to assist me in this case as it is part of the docket that he inherited from [the former law clerk].
>
> That's a standard disclosure I make in all of these circumstances. Thank you for your indulgence.[4]

Mr. Schenkel's counsel disagreed with the court's conclusion that there is no conflict of interest, stating:

> [A]t the beginning of the hearing Your Honor talked a little bit about your new Clerk and how he's worked at Parr Brown. That causes me some concern just given the nature of the allegations on these sanctions motions and whether or not there could be a prejudice to Mr. Schenkel. And so we'll just state for the record we disagree that there's no conflict at this point and we will – we will address that if – after we have a chance to look at the case law.[5]

After making the disclosure, the court provided the parties with its preliminary view of the cross-motions so the parties could focus their arguments on the issues concerning the court. For instance, the court said:

> As you all know by virtue of our work together in this case, it is my practice in virtually all of the cases that I am assigned in advance of hearing to engage in extensive preparation. I have, as I always do, I've read everything you've submitted very carefully. We've reviewed the legal authorities and the rules that govern the issues that you've presented. And I have, as I almost always

---

[4] Cross-Motions for Terminating Sanctions Hearing Tr. (Dkt. 326), at 4:9–6:5.
[5] *Id.* at 164:13–21.

5

do, formed a preliminary opinion about how the issues would be resolved based on the parties' briefing, the facts that you've developed in the record, and the law that you've cited to me. So I'd like to provide you with my initial thoughts, and I think that may help guide our discussion today.

. . . .

Let me first take up the Xyngular motion, the Xyngular parties' motion. In my view that motion is well taken. I think initially, at least coming to the bench, based on my review of the materials, that the Xyngular parties have shown by clear and convincing evidence that Mr. Schenkel had serious disputes with the Director Defendants and members of the Xyngular board at some point maybe arising around 2010 or so. That Mr. Schenkel solicited from Ian Swan documents and information, including specifically, by Mr. Schenkel's own testimony, documents and information relating to his ownership interest in Xyngular, and he asked for anything supporting his claims.

By virtue of his position in IT, Mr. Swan was able to access corporate servers in the database. Mr. Swan, I believe it's shown, improperly searched the corporate servers in the database for information and documents. I think it's established by clear and convincing evidence that Mr. Swan was not authorized to review, make use of, or give to any other person, including Mr. Schenkel, information or documents that were stored on that database or servers. He nevertheless accessed that information and shared it, shared both information and documents with Mr. Schenkel.

Mr. Schenkel is not authorized to receive or review the information or the documents that Mr. Swan provided. Those documents and information included confidential, personal and corporate information and records, including financial records, as well as materials that may constitute trade secrets. At least some of those materials on their face appear to be attorney-client communications and materials.

. . . .

All of this happened, by Mr. Schenkel's testimony and Mr. Swan's testimony, over the course of approximately a year, beginning sometime in approximately early 2011 or late 2011 and continuing into 2012 at some point, possibly, it seems likely, up until about September or so of 2012, shortly before this litigation commenced.

During that time period, during the time period of the communications with Mr. Swan, and reviewing information and documents on Mr. Swan's computer initially and then receiving information and documents over a period of time from Mr. Swan, during that same period of time Mr. Schenkel was contemplating the possibility of litigation with Xyngular and the Xyngular

6

parties.[6]

The court then made the following analogy concerning Mr. Schenkel's conduct:

> I think the record establishes that his conduct is akin to corporate espionage. I think it's correctly viewed as theft. I can't in my mind see how it's any different than a modern equivalent of being an employee at a company, at a business, and making an agreement with the janitor who has keys to the shop to break into the – break into the office building at night, break into the offices, rifle through the desks and the drawers and the files and just take whatever information the janitor can get their hands on to help the employee that's disgruntled. I think what happened in this case is the modern technological equivalent of that.[7]

After discussing its preliminary view of Mr. Schenkel's conduct, the court articulated the sanctions it was considering imposing against Mr. Schenkel:

> My orientation coming to the bench, if I'm right about everything I've said so far, and I may not be, is that dismissal is the appropriate and necessary sanction, dismissal with prejudice, and that no lesser sanction would be sufficient here for several reasons.
>
> . . . .
>
> But in my judgment, at least in preparation for this hearing, dismissal with prejudice is not a sufficient sanction in and of itself. Given the nature of the facts and the record before the Court, I think I would further be required to exclude from use in these proceedings any of the evidence that Mr. Schenkel unlawfully or improperly – I want to say improperly obtained before the litigation. Unless one of the Xyngular parties first introduced it in the case, my inclination is to prohibit Mr. Schenkel from using any of that material.
>
> . . . .
>
> The Xyngular parties also ask – in addition to entering judgment against Mr. Schenkel on his affirmative claims, the Xyngular parties ask me to enter judgment in their favor on their affirmative claims, and this I think is too much. I think that that relief is greater than necessary to give effect to the considerations I'm required to undertake when determining the appropriate sanction.
>
> . . . .

---

[6] *Id.* at 6:7–9:19.
[7] *Id.* at 11:15–25.

> But back to the remedies I think that are appropriate here or may be. One, the exclusion of evidence, second, the return of all the materials that were taken improperly before the commencement of the litigation, and the destruction of all copies of those materials by Mr. Schenkel and his counsel, with a certification to the Court of their compliance with that requirement.
>
> And I'm very interested to hear from the parties about this. There was no argument in the papers about this, but I am inclined to think that the removal of Mr. Schenkel's counsel and the disqualification from his counsel in this proceeding is also necessary for several reasons.
>
> . . . .
>
> There's the question of costs and fees, and my impression based on the papers is that the Xyngular parties have been forced to incur significant costs and fees associated with investigating, discovering, developing a record relating to Mr. Schenkel's improper conduct, have been forced now twice to file motions for sanctions relating to that conduct. And if they prevail, and if the record is as I think it is and the result is what I think it is, it seems to me that the Xyngular parties very likely are entitled to an award of costs and fees as part of the sanctions.[8]

Later in the hearing, the court engaged Mr. Schenkel's counsel in a colloquy on whether Mr. Schenkel improperly obtained documents belonging to the Xyngular Parties.

> Mr. Wood: You've described this as theft, Your Honor. Well, theft is a substantive claim. It's conversion in the civil context, and conversion is the wrongful exercise of dominion over the property of another. The elements of conversion are plaintiff's ownership or right to possession of the property at the time of the conversion, the defendant's conversion by a wrongful act or disposition of a property right and damages. And under Utah law the person has to be deprived of the possession. The Xyngular parties have not met any of those elements.
>
> The court: There's no claim for conversion here.
>
> Mr. Wood: That's right. They want to jump past a substantive claim. Your Honor, they're jumping past – you're making a decision there's been a theft here, and nobody has proved the elements of a theft.
>
> . . . .
>
> The court: I'm concerned – however you want to label it, I view it as theft on

---

[8] *Id.* at 12:12–16:10.

8

>   the record that's in front of me and we're having that discussion.
>   You may convince me I'm understanding the evidence incorrectly.
>   My preliminary orientation is not based on a conclusion that
>   anybody has satisfied the legal requirements of theft. I'm looking
>   at the conduct and the nature of the conduct in connection with the
>   litigation, and I'm trying to exercise what I think is my inherent
>   obligation to ensure that people don't misuse this process. That's
>   all I'm focused on.
>
>   I don't care if it technically meets the elements of theft in Utah or
>   Delaware or Mexico. What did he do is what I'm interested in, and
>   is it improper? Is there a reason he shouldn't be permitted to be
>   here asserting the claims? That's the gist of it.
>
> Mr. Wood: Well, Your Honor, I would strenuously disagree that that's
>   appropriate for the Court. And I cite to the case law that we talked
>   about, and it's Supreme Court case law. If the Court is going to be
>   issuing fundamentally penal sanctions, and you're going to make
>   rulings that there was a quote theft, that's a crime. We're either
>   dealing with a criminal statute or we're dealing with a civil statute.
>   And if you're going to make that finding, Mr. Schenkel is entitled
>   to a jury trial.
>
> The court: I'm not dealing with either statute. Don't confine me in a box. I'm
>   looking at the conduct, and I'm trying to determine is it consistent
>   with the litigant's obligations in this court? That's the question.
>   I'm not putting a label on it. You can, and if I'm wrong you can
>   reverse me if that's where I end up on the ruling, but we're not
>   even that far yet.[9]

At the end of the hearing, Mr. Schenkel's counsel expressed his concern that the court might be applying different standards to the two motions for terminating sanctions. The following exchange ensued:

> Mr. Wood: I just want to point out, Your Honor, that it has been interesting for
>   me to note the difference in which these two motions for
>   [sanctions] have been addressed.
>
>   Mr. Schenkel has submitted his testimony that he did not collect
>   documents in anticipation for litigation. He submitted testimony
>   that he didn't steal documents or ask Mr. Swan to steal documents.
>   Yet despite his testimony, the Court in its preliminary ruling has
>   suggested that the Court believes that a theft occurred, and that Mr.

---

[9] *Id.* at 41:17–47:12.

Schenkel had asked for documents in anticipation of litigation.

Now, Your Honor may or may not be able to come to those conclusions based on the evidence, but I will note that I found it concerning to me the different tone that was taken with respect to Mr. Schenkel's allegations of wrongful conduct. When the coin was flipped, the discussion revolved around whether there was a story or a legitimate explanation.

. . . .

As to Mr. Schenkel's claims, the Court stated it believed that these were cold facts or cold testimony. But when the reverse comes into play, a different standard seems to be being applied.

. . . .

And I'll say, Your Honor, from the outset of the case there seems to be suspicion about Mr. Schenkel's claims. And Mr. Schenkel, even though he may test – even though he may testify one way or other witnesses will confirm his testimony, the Court appears to be suspicious about that and is willing to accept as true allegations that contradict Mr. Schenkel's claims. But in the – on the other side, that same standard is not being applied.

The Xyngular parties are being given the benefit of the doubt. Their – their statements to the Court filed under penalty of perjury are allowed to be explained away or put off until the end of trial, at least that's the suggestion. And I would say, Your Honor, that would be a fundamentally unfair result. That's why I said it's not fair.

If we're going to look at terminating sanctions, if we're going to throw parties' claims out of the court, those same standards have to be applied to both sides.

. . . .

The court:  I'll tell you, Mr. Wood – and I'm not being defensive here. I just want to address this directly and give you a chance to respond. I'm holding in my hand a seven page document that is nothing more than standards that I believe apply to the claims and the arguments asserted by the parties, and they're different, and it's because the arguments that the parties advanced and the bases for their respective motions were different. They require different consideration of different factors.

> When Mr. Schenkel alleges that there should be terminating sanctions on the basis of perjurious testimony, I'm required to determine whether there was perjury in the first instance before I determine whether there should be a remedy for that. That requires me to look at the elements of perjury.
>
> And notwithstanding your position about my claim that there's theft and your insistence on imposing a definition, a legal definition on that claim in the sense of theft under Utah law or something, I'm talking in a more general sense, as I said earlier, I'm evaluating his conduct.
>
> . . . .
>
> It just seems to me that you've presented, the different parties have, fundamentally different questions that are resolved under different standards.[10]

The court then took the matter under advisement. Mr. Schenkel filed the present motion to disqualify two weeks later.

## DISCUSSION

Mr. Schenkel argues that disqualification is necessary because the undersigned's law clerk has a conflict of interest that must be imputed to the court and because the undersigned's comments and actions throughout this case exhibit partiality and bias. The court's discussion proceeds in three parts. First, the court provides the applicable legal standard. Second, the court analyzes Law Clerk's alleged conflict of interest. Third, the court examines Mr. Schenkel's allegations of partiality and bias.

In the end, the court concludes that Law Clerk does not have a conflict of interest and that the undersigned's comments and actions in this case have not created an appearance of partiality and bias against Mr. Schenkel.

---

[10] *Id.* at 249:25–254:17.

## I. Legal Standards

A district court judge who is the subject of a motion to disqualify has discretion to grant or deny the motion.[11] Mr. Schenkel moves for the undersigned's disqualification under 28 U.S.C. § 455(a), § 455(b)(2), and Canon 3F of the Code of Conduct for Judicial Employees. The court provides each rule in turn.

First, § 455(a) states that a federal judge "shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned."[12] Congress designed § 455(a) "to promote confidence in the judiciary by avoiding even the appearance of impropriety whenever possible."[13] Disqualification is appropriate under this provision only when a reasonable person, knowing all the relevant facts and circumstances, would question the judge's impartiality.[14] But disqualification is not required when the motion is "based on unsubstantiated suggestions of personal bias or prejudice."[15] And the court must view the facts through the lens of "a well-informed, thoughtful and objective observer, rather than [through the lens of a] hypersensitive, cynical, and suspicious person."[16]

Second, § 455(b)(2) states that a judge shall "disqualify himself . . . [w]here in private practice he served as lawyer in the matter in controversy, or a lawyer with whom he previously practiced law served during such association as a lawyer concerning the matter."[17]

---

[11] *Mathis v. Huff & Puff Trucking, Inc.*, 787 F.3d 1297, 1308–09 (10th Cir. 2015); *see also Salt Lake Tribune Publ'g Co., LLC v. AT&T Corp.*, 353 F. Supp. 2d 1160, 1172 (D. Utah 2005) (stating that a district court judge who is the subject of a motion to disqualify may himself determine whether disqualification is required).
[12] 28 U.S.C. § 455(a).
[13] *Mathis*, 787 F.3d at 1310 (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 866 (1988)).
[14] *Id.*
[15] *Salt Lake Tribune*, 353 F. Supp. 2d at 1172 (quoting *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 659 (10th Cir. 2002)); *see also Switzer v. Berry*, 198 F.3d 1255, 1258 (10th Cir. 2000) (noting that the Tenth Circuit "has long held that section 455(a) must not be so broadly construed that it becomes, in effect, presumptive, so that recusal is mandated upon the merest unsubstantiated suggestion of personal bias or prejudice" (citation omitted) (internal quotation marks omitted)).
[16] *Mathis*, 787 F.3d at 1310 (citation omitted) (internal quotation marks omitted).
[17] 28 U.S.C. § 455(b)(2).

Third, law clerks are "forbidden to do all that is prohibited to the judge."[18] Canon 3F of the Code of Conduct for Judicial Employees provides the rules governing law clerk conflicts of interest.[19] Canon 3F(1) states that a law clerk has a conflict of interest when "he or she . . . might be so personally or financially affected by a matter that a reasonable person with knowledge of the relevant facts would question the judicial employee's ability properly to perform official duties in an impartial manner."[20] Canon 3F(2)(a)(ii) further states that a law clerk should not perform any official duties in any matter in which:

(1) he "served as lawyer in the matter in controversy";

(2) "a lawyer with whom he . . . previously practiced law had served (during such association) as a lawyer concerning the matter," except "that the prohibition relating to the previous practice of law does not apply if he . . . [a] did not work on the matter, [b] did not access confidential information relating to the matter, and [c] did not practice in the same office as the lawyer"; or

(3) "he . . . or such lawyer has been a material witness."[21]

"Even if the judge has no reason to recuse [himself] based upon [his] own circumstances, a law clerk's relationships might cause the impartiality of decisions from that judge's chambers in which the clerk participates reasonably to be questioned."[22] That said, ordinarily "if a clerk has a possible conflict of interest, it is the clerk, not the judge, who must be disqualified."[23] But "[i]f a law clerk continues to work on the case in which his or her impartiality might reasonably be questioned . . . , the clerk's actual or potential conflict may be imputed to the judge."[24]

---

[18] *Hall v. Small Bus. Admin.*, 695 F.2d 175, 179 (5th Cir. 1983).
[19] *See* Code of Conduct for Judicial Employees § 320, Canon 3.
[20] Canon 3F(1).
[21] Canon 3F(2)(a)(ii).
[22] *Mathis*, 787 F.3d at 1310–11 (quoting *Hamid v. Price Waterhouse*, 51 F.3d 1411, 1416 (9th Cir. 1995)).
[23] *Id.* at 1311 (quoting *Hunt v. Am. Bank & Trust Co.*, 783 F.2d 1011, 1016 (11th Cir. 1986)).
[24] *Id.* (citing *Hall*, 695 F.2d at 180).

The court now turns to the substance of Mr. Schenkel's motion to disqualify.

## II. Law Clerk Conflict of Interest

Mr. Schenkel first contends that the undersigned's disqualification is necessary because Law Clerk has a conflict of interest under Canon 3F(2)(a)(ii) due to his prior employment at the Parr Brown law firm.

A law clerk has a conflict under Canon 3F(2)(a)(ii) if: (1) the law clerk "served as lawyer in the matter in controversy"; (2) "a lawyer with whom [the law clerk] previously practiced law had served (during such association) as a lawyer concerning the matter," unless the law clerk (a) "did not work on the matter," (b) "did not access confidential information relating to the matter," and (c) "did not practice in the same office as the lawyer"; and (3) the law clerk "or such lawyer has been a material witness."[25]

As the court stated during the January 12, 2016 hearing, Law Clerk was a summer associate at Parr Brown for twelve weeks after his first year of law school in 2013, and for six weeks after his second year of law school in 2014. He also spent eight weeks as a summer associate at a California law firm in 2014. During his time as a summer associate at Parr Brown, Law Clerk met Mr. Hale, Ms. Kennedy, and Ms. Cornish. Law Clerk did no work for Mr. Hale, though he did perform a "small project" with Ms. Kennedy in 2013 and "maybe possibly something with Ms. Cornish."[26] But Law Clerk "was neither directly nor indirectly associated with this case at anytime," and he "never performed any work of any kind on any issue relating to this case."[27] He ultimately accepted an offer from the California firm.

Mr. Schenkel does not contend that Law Clerk served as a lawyer in this case or that he—or any other Parr Brown lawyer—has been a material witness. Instead, Mr. Schenkel argues that

---

[25] Code of Conduct for Judicial Employees § 320, Canon 3F(2)(a)(ii).
[26] Cross-Motions for Terminating Sanctions Hearing Tr. (Dkt. 326), at 5:17–22.
[27] *Id.* at 5:15–17.

14

a conflict exists under prong two of Canon 3F(2)(a)(ii) because Law Clerk worked at Parr Brown in 2013 and 2014, during which time Mr. Hale, Ms. Kennedy, and Ms. Cornish were working on this case and the Xyngular Parties' first motion for terminating sanctions. Mr. Schenkel also argues that the exception does not apply, because, even though Law Clerk did no work on this case and it is ambiguous whether he accessed confidential information relating to this case, he worked in the same Salt Lake City office as Mr. Hale, Ms. Kennedy, and Ms. Cornish.

But Law Clerk did not practice law while he was a summer associate at Parr Brown. Indeed, the Tenth Circuit has recognized that summer associates and student law clerks do not engage in the practice of law.[28] If it were otherwise, summer associates across the country would be violating the rule against the unauthorized practice of law and countless law firms would be complicit in that misconduct. Because Law Clerk was not practicing law during his time as a summer associate at Parr Brown, he does not have a conflict of interest under the second prong of Canon 3F(2)(a)(ii). The undersigned need not disqualify himself on this ground.[29]

The court is mindful that the case's current posture requires the court to evaluate whether the parties and their counsel have engaged in sanctionable misconduct. The court is also mindful that Law Clerk has known counsel for the Third-Party Defendants for over two years. And the court is intimately aware that law clerks "are sounding boards for tentative opinions and legal researchers who seek the authorities that affect decision."[30] But the fact remains that Law Clerk neither worked on this case nor practiced law during his time at Parr Brown, and he has since accepted an offer with another law firm in California. In short, Law Clerk has no current or future personal, financial, or other interest in the outcome of this case or the pending cross-

---

[28] *See Dietrich Corp. v. King Res. Co.*, 596 F.2d 422, 426 (10th Cir. 1979).
[29] Because the court concludes that Law Clerk does not have a conflict of interest, the court need not analyze whether a conflict is imputed to the court.
[30] *Hall*, 695 F.2d at 179.

motions for sanctions.[31]

The court rejects Mr. Schenkel's argument that disqualification is necessary because of Law Clerk's alleged conflict of interest.

### III. Appearance of Partiality and Bias

The court now turns to Mr. Schenkel's contention that the undersigned's comments and actions in this case have created an appearance of partiality and bias against Mr. Schenkel.

Mr. Schenkel makes three arguments in support of his motion to disqualify. First, Mr. Schenkel argues that the court's statements at the outset of the January 12, 2016 hearing exhibit bias. Second, Mr. Schenkel contends that the court is applying different standards to the cross-motions for sanctions submitted by the parties. And third, Mr. Schenkel argues that the court's contemplated sanctions against Mr. Schenkel are unnecessarily punitive. The court rejects all three arguments.[32]

First, Mr. Schenkel argues that the court is biased because its preliminary ruling at the beginning of the January 12, 2016 hearing was based almost entirely on factual findings that are allegedly unsupported by the evidence. Mr. Schenkel takes issue with the court's statement that Mr. Schenkel's conduct is analogous to theft and corporate espionage. He contends that the analogy exhibits bias because there has been no showing that Mr. Schenkel's conduct meets the elements of theft. And when faced with that argument during the hearing, the court stated that it does not "care if it technically meets the elements of theft in Utah or Delaware or Mexico."[33]

---

[31] *See* Code of Conduct for Judicial Employees § 320, Canon 3F(1).

[32] Mr. Schenkel also repeats many of the same arguments that he made in his first motion to disqualify, which he incorporates into this motion by reference. For instance, he argues that the court: (1) unfairly accused Mr. Schenkel of untruthfulness, (2) drove Mr. Schenkel's primary witness off the stand during the hearing on Mr. Schenkel's motion for a temporary restraining order, (3) threatened baseless referrals to the United States Attorney and the Utah State Bar, (4) drew conclusions without any evidentiary basis, (5) ordered discovery on issues that no party had raised, and (6) sua sponte stayed the merits of the case after a year of delay. The court already addressed these arguments in its November 17, 2014 Memorandum Decision and Order. (Dkt. 173.) It will not do so again here.

[33] Cross-Motions for Terminating Sanctions Hearing Tr. (Dkt. 326), at 46:17–18.

Taken in context, the court was explaining that its preliminary view of the case based on the record before it was that Mr. Schenkel improperly obtained documents from Xyngular and used those documents in this litigation. In making that observation, the court was not focusing on the legal elements of theft. The court explained that its focus was instead on whether Mr. Schenkel's conduct in this litigation has been egregious enough to warrant terminating sanctions under the court's inherent powers to sanction conduct that abuses the judicial process. Indeed, the court stated during the hearing that the question is whether there is a "reason [Mr. Schenkel] shouldn't be permitted to be here asserting [his] claims."[34] The court's statements were not improper.[35]

Second, Mr. Schenkel argues that the court is biased against him because it is applying different standards to each party's motion for terminating sanctions. For instance, Mr. Schenkel argues, the court is unconcerned with whether Mr. Schenkel's conduct meets the elements of theft, but is concerned with whether Mr. Schenkel can prove the elements of perjury.

As the court explained during the January 12, 2016 hearing, the court is required to apply different standards to the different allegations of misconduct asserted by the parties in their respective motions. For example, when examining the Xyngular Parties' claim that Mr. Schenkel improperly obtained documents from Xyngular, the court must examine whether Mr. Schenkel's conduct is egregious enough to warrant terminating sanctions pursuant to the court's obligation to preserve the integrity of the proceedings before it. Conversely, when examining Mr. Schenkel's claim that the Xyngular Parties committed perjury in their discovery responses,

---

[34] *Id.* at 46:19–20.
[35] *See Liteky v. United States*, 510 U.S. 540, 555 (1994) (noting that "opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, [generally] do not constitute a basis for a bias or partiality motion"); *see also id.* (observing that "judicial remarks during the course of a [hearing] that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge").

the court must draw on the legal elements of perjury in the first instance. These are inherently different standards.

Third, Mr. Schenkel argues that the court's contemplated sanctions against him exhibit bias because they are punitive in nature and show a lack of restraint or discretion. Mr. Schenkel contends that the court's preliminary ruling at the outset of the January 12, 2016 hearing throws the book at Mr. Schenkel and imposes against him every possible sanction.

Here, the court was discussing what sanctions may be appropriate if its initial view of the record was correct. The court was inviting argument and discussion concerning the propriety of the various sanctions it was considering. The court also noted that whatever sanctions it may impose against Mr. Schenkel should adequately punish him for and deter future litigants from committing misconduct, as well as cure any prejudice to the Xyngular Parties. And the court further explained that its guide in making this determination is its inherent obligation to preserve the integrity of the judicial proceedings. The court's statements are insufficient to warrant disqualification.[36]

At bottom, Mr. Schenkel disagrees with the court's preliminary view of the pending cross-motions for sanctions. But the court's preliminary statements at the start of the January 12, 2016 hearing were just that—preliminary statements intended to invite argument on why the court's initial view may be wrong. The court even acknowledged at the hearing that Mr. Schenkel's counsel "may convince me I'm understanding the evidence incorrectly."[37]

Finally, the court has yet to make final findings of fact concerning Mr. Schenkel's conduct; has yet to formally apply standards to the various allegations of misconduct; and has yet to definitively determine whether Mr. Schenkel's conduct warrants sanctions, let alone the extent

---

[36] *See id.*
[37] Cross-Motions for Terminating Sanctions Hearing Tr. (Dkt. 326), at 46:9–10.

of any potential sanctions.  But even if it had, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion."[38]  If anything, "they are proper grounds for appeal, not for recusal."[39]

The court's comments and actions in this case would not lead a reasonable person, knowing all the relevant facts and circumstances, to question the undersigned's impartiality.

## CONCLUSION

The court DENIES Mr. Schenkel's motion to disqualify.  (Dkt. 330.)

SO ORDERED this 4th day of February, 2016.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge

---

[38] *Liteky*, 510 U.S. at 555; *see also Mendoza*, 468 F.3d at 1262 ("Unfavorable judicial rulings do not in themselves call into question the impartiality of a judge.").
[39] *Liteky*, 510 U.S. at 555.